**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:19-cv-00006-KFG** |
| | § | **JURY** |
| **STEPHEN F. AUSTIN STATE** | § | |
| **UNIVERSITY, STEVE** | § | |
| **WESTBROOK, Ed.D. IN HIS** | § | |
| **OFFICIAL CAPACITY** | § | |
| **AS INTERIM PRESIDENT, DR.** | § | |
| **MICHAEL WALKER, INDIVIDUALLY** | § | |
| **AND DR. PEGGY S. SCOTT,** | § | |
| **INDIVIDUALLY** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S  SECOND AMENDED COMPLAINT
UNDER FED. R. CIV. P. 12(b)(6)**

John Doe responds to the Motion to Dismiss Plaintiff's Second Amended Complaint under

Fed. R. Civ. P. 12(b)(6) filed by Defendants Stephen F. Austin State University (SFA) and Steve

Westbrook, Ed.D (Dr. Westbrook):

## I.       INTRODUCTION

On January 18, 2019, Doe filed his Original Complaint [Dkt. 1] for violations of Title IX

of the Education Amendments of 1972, 20 U.S.C. Sec. 1681, *et seq*. (Title IX), and deprivation of

substantive and procedural due process of law under the Fifth and Fourteenth Amendments to the

United States Constitution pursuant to 42 U.S.C. Sec. 1983.

On February 19, 2019, Doe filed an Amended Complaint [Dkt. 6] pursuant to Federal Rule

of Civil Procedure 15(a)(1)(A) adding Dr. Westbrook, the interim president of SFA, in his official

capacity, and seeking only injunctive relief under the *Ex parte Young* exception to a state official's Eleventh Amendment sovereign immunity protection.

On March 5, 2019, SFA and Dr. Westbrook filed a Rule 12(b)(6) motion [Dkt. 12] as to all of Doe's claims in his Amended Complaint. In response, Doe obtained Defendants' Consent to File Amended Pleading [Dkt. 14] and, pursuant to that consent, this Court permitted the filing of Plaintiff's Second Amended Complaint [Dkt. 15].

On March 11, 2019, Doe filed his Second Amended Complaint adding Dr. Michael Walker (Dr. Walker) and Dr. Peggy S. Scott (Dr. Scott) as individual defendants and pleading substantial additional facts in response to Defendants' Motion to Dismiss the Amended Complaint.

On April 1, 2019, SFA and Dr. Westbrook filed a Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. 21], to which Doe now responds.[1]  SFA and Dr. Westbrook argue the following nine points for dismissal of Plaintiff's Second Amended Complaint.

A.  Sovereign immunity bars Doe's section 1983 claims under Title IX.

B.  Doe failed to plead a Title IX deliberate indifference claim.

C.  Doe failed to plead a Title IX erroneous outcome claim.

D.  Doe failed to plead a Title IX retaliation claim.

E.  Doe failed to raise a plausible right to relief for his due process claims.

F.  Doe failed to sufficiently plead a right to injunctive relief under *Ex parte Young*.

G.  Doe's claim for failure to comply with former and current OCR Title IX Guidance is not actionable.

---

[1] Plaintiff did not oppose, and the Court granted an extension until April 30, 2019, for Defendants Dr. Walker and Dr. Scott to answer or otherwise respond to the Second Amended Complaint. The Defendants have filed an unopposed first motion for extension of time to file Walker and Scott's answer until May 6, 2019.

H.  Doe's claim for failure to follow SFA policies is not actionable.

I.  Doe failed to state a claim for punitive damages.

Plaintiff's definitive factual allegations are more than sufficient facts to state a claim on their

face.

## II.  <u>SUMMARY OF DOE'S RESPONSE</u>

In summary, Doe's responses to the nine points for the dismissal of Doe's Second

Amended Complaint are:

A.      SFA fully knows Doe's 42 USC § 1983 claim is against  Dr. Walker and Dr. Scott

for knowingly and intentionally depriving Doe of his clearly established right to procedural and

substantive due process and that Doe seeks  a permanent  injunction under the *Ex parte Young*

against  Dr.  Westbrook  in  **his**  official  capacity  to  expunge  all  reference  to  the  erroneous

investigation finding and disciplinary sanction from Doe's University's records.

B.      SFA knowingly allowed Dr. Scott to investigate the allegations against Doe, totally

indifferent to her bias against male students as a sexual assault victim counselor; SFA knowingly

and intentionally did not disclose Dr. Scott's biased history to Doe or other male students accused

of sexual assault and give them an opportunity to object to her participation; SFA was deliberately

indifferent to U.S. Department of Education Office of Civil Rights Title IX guidance (under the

old or new guidance) by failing to treat Doe and the alleged victim equally when it allowed the

alleged victim to be interviewed in the presence of her primary witness but did not allow Doe the

same opportunity. These are only a few of the facts Doe has pled that demonstrate deliberate

indifference under Title IX.

C.      Doe has stated a plausible claim for relief under the erroneous outcome theory of

recovery under Title IX.

D.      Doe has not pled retaliation as a separate theory of Title IX recovery, rather he pleads the facts demonstrating retaliation as support for his denial of due process claim.

E.      Doe has stated a plausible right to relief for his denial of substantive and procedural due process claims against Dr. Westbrook, Dr. Walker and Dr. Scott as each individual knowingly deprived Doe of his clearly established right to due process commensurate with the sanction each individual defendant callously leveled against him in disregard for SFA policy and constitutional law.

F.      Doe has sufficiently pled a right to injunctive relief under *Ex parte Young*.

G.      Doe has sufficiently pled facts that show SFA failed to comply with former and current Department of Education OCR Title IX Guidance in deliberate indifference to Doe's rights under Title IX and that demonstrate the due process SFA provided to Doe was inadequate and not commensurate with the rights of which Doe was deprived.

H.      SFA and its officials deprived Doe of his clearly established rights to even the minimal degree of due process and the fact that SFA's policies either did not allow Doe (and other male students) basic rights such as the right to confront his accuser (the investigator and alleged victim), the opportunity to see all the evidence SFA considered, the right to an impartial finder of fact and decision maker, or its officials were deliberately indifferent to these rights are sufficient facts to support of the gender bias element of his Title IX claim and his denial of due process claims.

I.      Doe withdraws his claim for punitive damages.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) governs dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule

8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require  'detailed  factual allegations,' ... it demands more than ... 'labels and conclusions.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly,* 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F.3d 464,467 (5th Cir. 2004)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

## IV.    ARGUMENTS & AUTHORITIES

### A. Sovereign immunity does not bar Doe's Section 1983 claims for injunctive relief against Dr. Westbrook.

Doe's Section 1983 claims against SFA and Dr. Westbrook seek a permanent injunction ordering SFA, through Westbrook, to expunge the erroneous investigation finding that Doe violated the university's code of student conduct and its Title IX-related policies from University records, removing the stigma of an erroneous finding that he committed sexual assault and restoring Doe's good conduct standing at SFA.[2]   Doe recognizes that claims for injunctive relief against SFA must be effected by its officials, in this instance, the interim president of the university.   Doe has sued Dr. Westbrook in his official capacity as Interim President. Consequently, Doe has invoked the *Ex parte Young* doctrine that provides an exception to sovereign immunity for claims for prospective relief against state officials who have been sued in

---

[2] SAC at ¶ 59

their official capacity.  *Nelson v. Univ. of Tex. Dall.*, 535 F.3d 318, 320 (5th Cir. 2008). For such an official to be held liable under *Ex parte Young* that official must be in a position to provide the requested relief. *Morris v. Livingston,* 739 F.3d 740, 746 (5th Cir. 2014).  As interim president, Dr. Westbrook is the official with the authority to provide the requested relief.

> **B.  Doe has not pled deliberate indifference as a separate theory of Title IX recovery.**

 In their motion to dismiss, SFA and Dr. Westbrook's second point for dismissal is their contention that Doe failed to plead a Title IX deliberate indifference claim.

Though it has not expressly endorsed specific theories of liability under Title IX, the Fifth Circuit has applied the theories of erroneous outcome and selective enforcement announced by the Second Circuit. *Plummer v. University of Houston*, 860 F.3d 767, 777 (5th Cir. 2017), citing *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994).  In addition, the Sixth Circuit has referenced deliberate indifference and archaic assumptions as alternate theories. *Doe v. Miami Univ.*, 882 F.3d 579, 584 (6th Circ. 2018).  Doe has pled sufficient facts to demonstrate SFA's deliberate indifference to his rights under Title IX, *including* an entitlement to Title IX recovery under the erroneous outcome theory.[3]  Doe pleads facts demonstrating Defendant's deliberate indifference to Doe's rights under Title IX during the resolution of the sexual assault allegation (investigation and imposition of sanctions). These facts demonstrate how SFA's deliberate indifference contributed to an erroneous outcome in in the allegation against him in particular and other male students whom SFA has subjected to its discriminatory Title IX policies and practices. Specifically, the facts demonstrating Defendant's deliberate indifference show an articulable doubt on the accuracy of the proceeding **and** that gender bias was a motivating factor in how Doe was treated and the erroneous finding against him and how other male students are discriminatorily

---

[3] SAC at ¶ 17 and 39

treated in the resolution of sexual assault allegations at SFA.[4]  Likewise, the facts demonstrating deliberate indifference  support Doe's claims for denial of due process.[5]

### C.  Doe pleads a plausible erroneous outcome claim under Title IX.

In their motion to dismiss, SFA and Dr. Westbrook's third point for dismissal is their contention that Doe failed to plead a Title IX erroneous outcome claim.

At the outset, SFA and Westbrook argue that the Fifth Circuit has not adopted the erroneous outcome Title IX cause of action and urges this Court not to do so. After exhaustive searching, Doe's counsel is not aware of a Fifth Circuit case that declined to adopt the theory. While the Fifth Circuit may not have directly considered the question, it has reviewed the Title IX claims related to university disciplinary proceedings premised on an erroneous outcome. See *Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 179 (5th Cir. 2018); *Plummer v. Univ. of Hous.*, 860 F. 3d 767 (5th. Cir. 2017).

A plaintiff who claims a right to recovery on the erroneous outcome theory must allege particular facts sufficient to cast some doubt on the outcome of the proceeding and must allege particular circumstances suggesting gender bias was a motivating factor behind the erroneous finding. *Yusuf* 35 F.3d at 715.  The Second Circuit in *Yusuf* indicated that allegations suggesting gender bias might include statements by the disciplinary tribunal, statements by pertinent University officials or **patterns of decision-making that also show the influence of gender.**  *Id. (emphasis added).*

> 1. <u>Doe has alleged particular facts establishing articulable doubt on the outcome of his Title IX proceeding.</u>

---

[4] See IV (C) below.
[5] See IV (E) below.

The facts pled by Doe establish articulable doubt as to the accuracy of the finding that he engaged in nonconsensual sex with Ms. Roe and in fact establish that Ms. Roe went to Doe's dorm room the morning of December 10, 2016 for the purpose of having consensual sexual relations with him.  Specifically, a day or two prior to the December 10, 2016 sexual encounter,  Ms. Roe sent an unsolicited Instagram to Doe containing a picture of her dressed in a scanty undergarment with the caption that said words to the effect that she wanted to be Doe's "friends with benefits."[6] At the party Ms. Roe and Doe attended on December 9, 2016, Ms. Roe was seen by multiple witnesses rubbing her buttocks against Doe's groin area and hugging on him.[7] She was seen by multiple other witnesses pursuing Doe at the party.[8] When leaving the party at about 2:30 AM, Ms. Roe went to Doe's room with CW#2 to pick up keys and upon leaving sent Doe a text saying, "I'll come back."[9]  Shortly thereafter she called Doe and told him she was coming back to his room ostensibly to give her roommate CW#1 and her boyfriend privacy.[10]  Prior to going to Doe's room, Ms. Roe talked to CW#2 who told Ms. Roe that if she wanted to give her roommate privacy Ms. Roe could come to CW#2's apartment rather than go to Doe's apartment.[11]   During the investigation, CW#2 gave a statement saying that she (CW#2) believes that Ms. Roe knew Doe's roommate was not at Doe's apartment when Ms. Roe chose to go over there on the morning of December 10, 2016 and that Ms. Roe knew what she was doing when she chose to go over there.[12] CW#2 also said that from the way Ms. Roe was dancing with Doe earlier in the evening (at the party) it looked as if Ms. Roe wanted to start an intimate relationship with Doe.[13]  Ms. Roe indeed

---

[6] SAC at ¶ 22(c).
[7] SAC at ¶ 14.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] SAC at ¶ 22(d).
[12] *Id.*
[13] *Id.*

voluntarily returned to Doe's apartment at approximately 4:00 a.m.[14] Neither she nor Doe were intoxicated.[15]  When she arrived at Doe's apartment, she voluntarily got into Doe's bed with him rather than use his roommate's bed.[16]  After getting in Doe's bed together, Doe and Ms. Roe began to fondle each other including Doe touching her breasts and inner thighs after which they had consensual intercourse.[17]  The SFA police report confirms that Ms. Roe did not have any acute trauma or surface injuries indicative of force.[18] Ms. Roe does not allege that Doe forced or coerced her to engage in intercourse.[19] Doe alleges that Ms. Roe was awake during the entire time that she was in his room with him and that she willingly engaged in  consensual sex with him[20] and at no time did she say no or ask him to stop.[21]  Doe also pleads that the investigation by SFA law enforcement authorities and Dr. Scott specifically recite that there was no use of physical force, no threat of physical force, no coercion, no incapacitation and that the law enforcement investigations did not reflect the presence of any other factor that would have eliminated Ms. Roe's ability to exercise her own free will to choose whether or not to have sex with him.[22]  Doe further alleges that Dr. Adam Peck, Assistant Vice President and Dean of Student Affairs for SFA, made a specific finding that there was no evidence of predatory behavior, use of physical force, use of weapons or other means of incapacitation.[23] Doe alleges Ms. Roe was awake and had the capacity

---

[14] SAC at ¶ 14.
[15] SAC at ¶ 14, 22(d).
[16] SAC at ¶ 14.
[17] *Id*.
[18] *Id*.
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] SAC at ¶ 29.
[23] SAC at ¶ 36.

to say no. He further alleges Ms. Roe  did not verbally or through any other conduct say "no" and that she  willingly participated.[24]

The facts set forth in the foregoing paragraph and taken from Doe's Second Amended Complaint are more than formulaic recitations or speculation. *Twombly,* 127 S.Ct at 1974 ("factual allegations must be enough to raise a right to relieve above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"). Accepting these pleaded facts as true and viewing them in the light most favorable to Doe establishes that Doe has alleged particular facts sufficient to establish SFA's deliberate indifference and cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding.  *Yusuf* at 715.

2.    Doe has alleged a plausible claim of particular circumstances establishing gender bias was a motivating factor behind the erroneous finding.

Doe has alleged gender bias at the heart of the investigation and procedures employed by SFA.  SFA's procedures call for a single investigator to make the initial finding of responsibility for a Title IX violation.  SFA chose Dr. Scott for that most critical role in the process. Dr. Scott had a history of service as a victim assistance consultant in sexual assault cases.[25]  SFA knew of and, in fact, approved Dr. Scott's to work as a paid sexual assault victim consultant in addition to performing her duties as a university employee.[26]  Doe has pled, upon information and belief, that the majority of Dr. Scott's clients with whom she consulted concerning sexual assault were female.[27]   In addition to this glaring bias against male students, including Doe, SFA was aware that Dr. Scott had previously been a coach or advisor to the SFA dance team and that Ms. Roe was

---

[24] SAC at ¶ 13-15.
[25] SAC at ¶ 21.
[26] *Id.*
[27] *Id.*

a member of the SFA dance team.[28] It is difficult to imagine what additional facts SFA would have this court require Doe to plead to obtain the relief it and its officials intentionally denied him.

Doe has also alleged that Dr. Scott's gender bias is reflected in her actions and pattern of decisions throughout the investigation. Specifically,  Dr. Scott:

a.      asked for and considered the opinion testimony of Ms. Roe's witnesses but, upon information and belief, did not ask Doe's witnesses for their opinions or consider them if she did;

b.      admits she "pressed" witnesses who had testimony favorable to Doe to change the favorable testimony, but, upon information and belief, she did not "press" Ms. Roe's witnesses the same way;

c.      considered immaterial and irrelevant statements from Ms. Roe's witnesses, but deliberately disregarded material and relevant information provided by Doe and his witnesses. Specifically, a suite-mate of Doe's provided a statement that on or about the day of the December 9, 2016 party, Ms. Roe sent Doe a Snapchat picture of her dressed in a very small brazier with the caption that said words to the effect that Ms. Roe wanted to be Doe's "friend with benefits."  This testimony was not included in the investigation report and it is apparent from Dr. Scott's investigation file and report that she did not even consider this evidence.

d.      disregarded evidence provided by Ms. Roe's witnesses that was favorable to Doe. Specifically, Dr. Scott disregarded testimony that: (i) CW#2 had told Ms. Roe that she could come to her apartment rather than to Doe's apartment if she wanted to give her roommate privacy with her boyfriend, (ii) CW#2 testified that Ms. Roe had been over to Doe's room multiple

---

[28] SAC at ¶ 48(c).

times and that she believed a relationship was starting and that the way she was dancing on Doe

earlier in the evening made it look like she wanted to start an intimate relationship with Doe, and

(iii)  CW#2 said that Ms. Roe was not intoxicated, was fine, knew Doe's roommate was not there,

and knew what she (Roe) was doing when she went over there;

      e.     illogically, inexplicably and against the all of the evidence, concluded that

the unsolicited text messages Ms. Roe sent Doe inviting herself to Doe's dorm room showed that

Doe invited Ms. Roe to his residence.[29]

Doe also has pled that SFA was aware of and tacitly endorsed Dr. Scott's gender bias by

accepting her investigation findings although Doe made defendant aware of the discriminatory

procedures, she employed in conducting the investigation. Upon information and belief, Dr. Scott

invited Ms. Roe and two of her witnesses to be interviewed together, and she actually interviewed

Ms. Roe and CW#1 together while not extending the same opportunity to the male respondent and

his male witnesses.[30] Not only did these witness interview techniques demonstrate gender bias,

but they also violated the very elementary procedural fairness requirements found in the April 4,

2011 U.S. Department of Education Dear Colleague Letter in effect at all times relevant to Doe's

claims[31], the April 29, 2014 DOE OCR Questions and Answers[32] and SFA policies regarding

sexual misconduct investigations.[33],[34]

---

[29] SAC at ¶ 22 (a) – (e).
[30] SFA, in its motions, has denied multiple facts pled by Doe but noticeably has failed to deny these.
[31] SAC at ¶ 25.
[32] Id.
[33] SAC at ¶ 23.
[34] The sexual assault resolution procedures also violate the current DOE OCR guidance.  On September 22, 2017, the Department of Education Office of Civil Rights withdrew its statements of policy and guidance reflected in its "Dear Colleague Letter on Sexual Violence," issued on April 4, 2011, and the "Questions and Answers on Title IX and Sexual Violence" issued on April 29, 2014. The Department issues interim guidance on "Campus Sexual Misconduct" that states it

Doe has also alleged that Dr. Scott's bias is demonstrated in the deliberately indifferent manner in which she interpreted evidence. She knew that CW#1 was not in the dormitory room when the intercourse took place and knew that CW#1 could not provide first-hand information about what happened. Nevertheless, Dr. Scott concluded that CW#1's story "was very consistent with [Ms. Roe's]." When she determined that CW#1's testimony corroborated Ms. Roe's account of what happened in Doe's dorm room, she knew she had allowed CW#1 to sit in on the interview with Ms. Roe.  Only a gender biased investigator and an institution that was deliberately indifferent to Title IX and Title IX guidance issued by the OCR requiring male students to be treated the same as female students in resolving sexual assault claims would reach and endorse such a biased, overtly erroneous and discriminatory conclusion.[35]

Doe has also alleged that Dr. Scott and Dr. Walker showed gender bias in their decisions interpreting the definition of consent contained in SFA's policies and procedures and, in the application of that definition to the facts in this case. Specifically, the facts of both Dr. Scott's investigation and the investigation by SFA law enforcement established the complete absence of any factor that would have eliminated Ms. Roe's ability to exercise her own free will and to choose whether to have sex with Doe.[36]

---

would rely on its 2001 "Revised Sexual Harassment Guidance" as well as the "Dear Colleague Letter on Sexual Harassment" issued on January 25, 2006. In its withdrawal statement, the OCR states: "many schools have established procedures for resolving [sexual harassment and sexual assault] allegations that 'lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation.'"  https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct/. Accessed April 28, 2019. The policies and practices SFA inflicted on Doe and other male students exemplify those criticized by the DOE.
[35] SAC at ¶ 24.
[36] SAC at ¶ 28-29.

The absence of any factor indicating lack of consent combined with the facts pled regarding Ms. Roe's conduct at the party, the circumstances under which Ms. Roe came to Doe's dorm room, left, returned, chose to sleep in his bed rather than his roommate's all establish consensual sex.[37] Doe has pled that in disregarding the exculpatory nature of those facts Dr. Scott, Dr. Walker and SFAs were deliberately indifferent to Doe's rights to a fair and impartial investigation and showed a gender bias motivating the erroneous outcome of his Title IX proceeding.[38]  Taken together, the decision-making by Dr. Scott, Dr. Walker and SFA in the investigation, determination, resolution process and outcome of Doe's Title IX case establish, beyond speculation, that his gender influenced the outcome and discriminated against Doe because of his gender.  *Yusuf* at 715.

Finally, an email from Defendant Walker to potential members of the appeals panel for Doe's and another student's appeals, dated February 6, 2017, shows the depths of SFA's gender bias.[39]  One of the potential members of the appeals panel was Ms. Loree McCary, an Assistant Athletic Director. In the email Defendant Walker says that since the first case "… involves an athlete and for this case I do not want Loree to be part of this appeal panel." The email goes on to apologize to two of the other recipients for assigning them to both cases but explained it was necessary in part since "… there is a conflict with Loree on one of these."  Defendant Walker was careful to avoid the conflict of having an Assistant Athletic Director sit as one of the members of the appeals panel for a male athlete. At the same time, he and SFA were deliberately indifferent to the pled facts that Dr. Scott, the most important actor in the investigation, was formerly an advisor to the dance team and of which  Ms. Roe was a member and had a history of being a paid consultant to female sexual assault victims.  Defendant Walker's ensuring that an athletic director did not sit

---

[37] SAC at ¶ 13-15.
[38] SAC at ¶ 39.
[39] Bates number JD000787.

as a member of the appeals panel in the appeal involving a male athlete while at the same time allowing the former advisor to the dance team to function as the investigator and be sole arbiter of the facts in the investigation involving a complainant who was a female member of the dance team, directly demonstrates gender bias and deliberate indifference.[40]

### D. Doe has not pled retaliation as a separate theory of Title IX recovery, rather he pleads the facts demonstrating retaliation as support for his denial of due process claim.

The Second Amended Complaint does not contain a separate count seeking recovery under Title IX for retaliation. Rather, in paragraphs 49 through 51, Doe alleges that he was retaliated against when he attempted to obtain the information necessary to defend himself against the Title IX claims. Doe discusses that retaliation and the support it provides for his denial of due process claims in the following section.

### E. Doe has stated a plausible right to relief for his denial of substantive and procedural due process claims against Dr. Westbrook, Dr. Walker and Dr. Scott.

1.  <u>Doe's Request for an Expungement Falls Within the *Ex parte Young* Exception to a State Official's Eleventh Amendment Immunity Protection</u>.

In their motion to dismiss, SFA and Dr. Westbrook's fifth point for dismissal is their contention that Doe failed to raise a plausible right to relief for his due process claims.

Doe has sued Dr. Westbrook under 42 U.S.C. section 1983 for denying Doe due process in the course of SFA's investigation into Ms. Roe's allegations of sexual assault. Doe seeks a

---

[40] These facts were not pled in Doe's Second Amended Complaint because the undersigned counsel had not had the opportunity to carefully review the more than 1945 pages of documents  compiled in connection with Doe's Initial Disclosures. This fact underscores why the U.S. Supreme court requires only "enough facts to state a claim to relief that is plausible on its face" and not the hyper-heightened pleading Defendants would have the court impose in this instance. *Twombly,* 550 U.S. at 570.  Should the Court otherwise be inclined to find the absence of gender bias in the current pleading, Doe respectfully requests leave of court to amend to allege these additional facts.

prospective injunction in the form of an order directing Dr. Westbrook to expunge Doe's record of the sexual assault investigation and disciplinary proceeding.

In connection with his section 1983 claim against Defendant Westbrook, Doe has pled the *Ex parte Young* doctrine, an exception to Eleventh Amendment immunity that protects state officers, such as Defendant Westbrook, from suit in some circumstances. *Ex parte Young*, 209 U.S. 123 (1908). Although the Eleventh Amendment "precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities," under the *Ex parte Young* doctrine that was articulated by the Supreme Court in 1908, "the Eleventh Amendment does not bar a federal court from awarding [ ] equitable prospective relief." *Doe v. Univ. of Co., Boulder*, 255 F. Supp. 3d 1064, 1081 (D. Colo. 2017). At least three circuit courts have held that a request for an expungement is a request for prospective relief. *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1230 (D. Colo. 2014) (a request to expunge an academic record is not barred by the Eleventh Amendment); *Doe v. Cummins*, 662 Fed. Appx. 437, 444 (6th Cir. 2016) (wherein students requested an injunction that would compel removal of information regarding alleged assault from disciplinary records, the Eleventh Amendment "d[id] not bar relief that is prospective in nature"); *Shepard v. Irving*, 77 Fed. Appx. 615, 620 (4th Cir. 2003) (request for expungement of "F" grade was not barred by the Eleventh Amendment); *Thomson v. Harmony*, 65 F. 3d 1314, 1321 (6th Cir. 1995) (request for "eliminating negative entries in [ ] personnel record" was not barred by the Eleventh Amendment). *See also Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

Thus, if the requested relief is for expungement, "Plaintiff's claim survives." *Doe v. Univ. of Colo.*, 255 F. Supp. 3d at 1082. The defendant must simply have "some connection with the enforcement of the act" such that he can accomplish the requested relief. *Ex parte Young*, 209 U.S.

123, 157 (1908).

In his motion to dismiss, Defendant Westbrook acknowledges Doe seeks an expunction of his SFA record but alleges Doe did not adequately plead the *Ex parte Young* exception.  However, Doe demonstrated Defendant Westbrook is a person with "some connection with the enforcement of the act," which is expungement of Doe's record. *Ex parte Young*, 209 U.S. at 157. Thus, even though Defendant Westbrook is a state officer, because Doe seeks expungement (prospective injunction) and Defendant Westbrook is the SFA official who is charged with expunging student records, Doe's section 1983 claim against  Defendant Westbrook falls squarely within the *Ex parte Young* exception and survives  Defendant Westbrook's Eleventh Amendment challenge.

2. <u>Doe Has a Protected Liberty Interest in His Education at SFA that Gives   Rise  to an Entitlement to Procedural Due Process.</u>

In his motion to dismiss, Defendant Westbrook contends Doe has not alleged a protected interest that would give rise to Doe's being entitled to procedural due process protection in the course of SFA's disciplinary process against him. Defendant Westbrook is incorrect.

Whether Doe was entitled to procedural due process depends upon whether he has a "liberty or property interest that is entitled to procedural due process protection." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (1995). If Doe has such a liberty or property interest, the second issue is "what process is due," which is addressed in the following section, below. *Id*.

In Texas and the Fifth Circuit, a student has a <u>liberty</u> interest in his or her higher education. In 1995, the Texas Supreme Court in *University of Texas Medical School at Houston v. Than* held that a medical student who had been "charged with academic dishonesty" and was expelled, "has a constitutionally protected liberty interest in his graduate education that must be afforded procedural due process." *Id*. at 928, 930. More than two decades after *Than*, the Fifth Circuit decided *Plummer v. University of Houston*, a case involving two students disciplined for alleged

sexual misconduct. *Plummer*, 860 F.3d 767 (5th Cir. 2017)). In analyzing the *Mathews* factors and what process was due the students, the Fifth Circuit cited to *Than* and noted at the outset that the students "ha[d] a liberty interest in their higher education." *Plummer*, 860 F.3d at 773. *See also Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961) ("The precise nature of the private interest involved in this case is the right to remain at a public institution of higher learning in which the plaintiffs were students in good standing.").

Thus, without question, Doe has a clearly established liberty interest in his education at SFA that gave rise to his entitlement to procedural due process in the course of Defendant's investigation of the alleged sexual misconduct.

### 3.   Procedural Due Process

After having established that Doe has a clearly established liberty interest in his higher education that entitles him to procedural due process in the course of the disciplinary proceeding brought against him by SFA, the next issue is to identify the process that Doe was due. *See Than*, 901 S.W.2d at 929. "What process is due is measured by a flexible standard that depends upon the practical requirements of the circumstances." *Id.* at 930 (citing *Mathews*, 42 U.S. 319, 334(1976)). This flexible standard (known as the *Mathews* factors) was articulated in 1976 by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Fifth Circuit in *Plummer* explained:

> Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.

*Plummer*, 860 F.3d at 773 (citing *Mathews*, 424 U.S. at 335).

In determining what process was due in the case at hand, Doe directs this Court to the Southern District of Mississippi's recent decision in *Doe v. University of Mississippi*, 361 F. Supp.

3d 597 (hereinafter referred to as *University of Mississippi*), a case almost identical to the case at hand. The facts in *University of Mississippi* are so similar to those in this case, and the legal analysis is so thorough and on-point, that Doe will rely heavily upon *University of Mississippi* in this due process analysis.

The *University of Mississippi* court began its procedural due process discussion by citing to *Mathews* and stating, "[s]tarting with procedural due process, the concept 'imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'" 361 F. Supp. 3d at 608 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, (1976)). The court then cited to the Fifth Circuit's opinion in *Dixon v. Alabama State Board of Education* to explain, "'[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Id*. (citing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)). The *University of Mississippi* court then turned to the Fifth Circuit's application of the *Mathews* factors in *Plummer*. *Univ. of Miss.*, 361 F. Supp. 3d at 608 (citing *Mathews*, 424 U.S. at 335). Again, those three factors are:

(1) the student's interests that will be affected;

(2) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the university's interests, including the burden that additional procedures would entail.

*Plummer*, 860 F.3d at 773 (citing *Mathews*, 424 U.S. at 335).

As in *University of Mississippi* and *Plummer* before it, the first and third factors are "easily identified" in the case at hand. *Univ. of Miss.*, 361 F. Supp. 3d at 609. Regarding the first *Mathews* factor, Doe has an interest in his college education and future associated with that education that

will certainly be affected by SFA's disciplinary proceedings against him. Such disciplinary proceedings "'could have a 'substantial lasting impact on [his] personal li[f]e[], educational and employment opportunities, and reputation[] in the community.'" *University of Mississippi*, 361 F. Supp. 3d at 609 (citing *Plummer*, 860 F.3d at 773). Regarding the third *Mathews* factor, SFA has an interest in "'the educational process, including maintaining a safe learning environment for all its students, while preserving its limited administrative resources.'" *Id.*

Thus, Doe's due process claim hinges on the second *Mathews* factor, as it did in *University of Mississippi* and *Plummer* – "**the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards.**" *University of Mississippi*, 361 F. Supp. 3d at 609 (citing *Mathews*, 860 F. 3d at 774) (emphasis added).

In assessing the second *Mathews* factor, the *University of Mississippi* court cited to seven procedural complaints asserted in the plaintiff's complaint against the University. 361 F. Supp. 3d at 609. Herein, Doe has asserted *nineteen* procedural issues with SFA's handling of the proceeding against Doe. The pleaded facts demonstrating the denial of due process are these:

1.     Defendant Scott served as the investigator, factfinder and initial adjudicator of Plaintiff's responsibility for the charges against him;[41]

2.     Plaintiff was not given a hearing or an opportunity to review the investigation report during the investigation stage;[42]

3.     Plaintiff was not given a hearing prior to Defendant Scott's January 20, 2017

---

[41] Sac at ¶15.
[42] SAC at ¶15.

finding of responsibility;[43]

4.      Plaintiff was not given the opportunity to contest or cross-examine the Complainant;[44]

5.      Plaintiff was not given the opportunity to contest or cross-examine the testimony of Complainant's three witnesses; [45]

6.      Plaintiff was not given the opportunity to even submit written questions to be asked of  Complainant and the Complainant's witnesses;[46]

7.      Upon information and belief, Defendant Scott invited Complainant to sit in on interviews with CW#1 and CW#2 while not inviting Plaintiff to sit in on those interviews;[47]

8.      Upon information and belief, CW#1 set in on the Complainant's interview but Plaintiff was not offered the opportunity or permitted to do the same with any of the witnesses;[48]

9.      Plaintiff was never given a hearing before the panel that considered his appeal of Defendant Scott's finding of responsibility;[49]

10.    Plaintiff never received the opportunity to cross-examine Defendant Scott – an opportunity that certainly would have revealed her history of male bias and deliberate denial of a fair investigation;[50]

11.    Plaintiff was not told the names of the panel of SFA officials who reviewed his case (and who may harbor biases);[51]

---

[43] *Id.*
[44] *Id*.
[45] *Id.*
[46] SAC at ¶ 54(a).
[47] SAC at ¶ 15.
[48] *Id.*
[49] Sac at ¶ 54(d).
[50] SAC at ¶ 54 (c).
[51] SAC at ¶ 54(f).

12.     Defendant SFA denied Plaintiff's request to attend the deliberations of or address the panel that was considering the appeal of Defendant Scott's finding of responsibility;[52]

13.     Plaintiff was never allowed  to see the evidence the appeal panel considered;[53]

14.     Defendant Walker was made aware of Defendant Scott's fundamental mistakes in the conduct of the investigation and the formulation of her findings before he made his decision yet chose to ignore them;[54]

15.     Defendant Scott admitted the evidence was "$50-50$," yet Defendants Scott, Walker and Peck still found Plaintiff responsible by a preponderance of the evidence, thus failing to apply the standard of proof set out in its own policy; [55]

16.     Defendant SFA forced Plaintiff to use the state's Open Records Act to obtain evidence of bias that was known to Defendants, information in his student educational record to which he had a right to see under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99;[56]

17.     Defendant stonewalled and, in fact, made intentional or reckless misrepresentations to the Office of the Attorney General Open Records Division to delay Plaintiff's obtaining the records necessary to defend himself before the three-person appeals panel;[57]

18.     Defendant SFAs general counsel asked the Office of the Attorney General to deny Plaintiff's request for information based on the baseless assertion that he believed Doe's request for information to defend against the sexual assault allegation had been written by an attorney;[58]

---

[52] *Id.*
[53] SAC at ¶ 54(g).
[54] SAC at ¶ 25.
[55] SAC at ¶ 56.
[56] SAC at ¶ 54(e).
[57] SAC at ¶ 11, 35 and 51.
[58] SAC at ¶ 51(b).

and

19.     Defendant SFAs general counsel intentionally overcharged Plaintiff for information the general counsel knew Doe had requested to assist in his appeal.[59]

These facts have been more than sufficiently pled to state claims upon which relief may be granted.

### a.     The Investigation of Defendant Scott, Title IX Coordinator

Doe's first eight procedural complaints have to do with Defendant Scott's investigation and her subsequent report. Under *Mathews,* the procedural process due a student is flexible, and courts must consider the totality of the circumstances.

The flexibility of the *Mathews* factors is demonstrated in *Plummer* when the Fifth Circuit affirmed summary judgment against the two students for an alleged sexual assault even though there was "evidence that the Title IX Coordinator had a conflict of interest and allegedly failed to properly investigate." *Id*. The Fifth Circuit explained that the *Mathews* analysis depends upon the facts of each case, *Id*. at 774 n.8, and "[b]ecause the evidence [video and photo] of guilt in *Plummer* was overwhelming, the process was deemed sufficient as a matter of law." 361 F. Supp. 3d at 610. The Fifth Circuit opined that "further procedural safeguards would not have lessened the risk of an erroneous deprivation of [the plaintiffs'] interests or otherwise altered the outcome." 860 F.3d at 774 (citing *Mathews*, 424 U.S. at 335). Thus in *Plummer*, the Court found the evidence did not demonstrate that the procedures used by the Title IX Coordinator "undermined the integrity of their proceedings."  361 F. Supp. 3d at 610 (citing *Plummer*, 860 F. 3d *Id*. at 776).

The facts in the case at hand are different, just as they were in *University of Mississippi*, wherein the court explained:

---

[59] SAC at ¶ 51.

> "This case is different for two main reasons. First, it is before the Court under Rule 12(b)(6), so the issue is plausibility rather than a lack of evidence. Second, the facts—as pleaded and in the light most favorable to Doe – do not suggest overwhelming proof that Doe sexually assaulted Roe. Thus, the amount of process due may be higher than in *Plummer*."

361 F. Supp. 3d at 610. In analyzing the "proof" in *University of Mississippi*, that court set forth facts similar to those in this case. Both Defendant Scott's investigation in this case, and the Title IX Coordinator's investigation in that case, were flawed, and the resulting reports presented as the "official report[ ] of the Title IX Coordinator," were incomplete. 361 F. Supp. 3d at 610. In both cases, the male student was not permitted to be heard by the panel and was not given the opportunity to meet with the Title IX Coordinator. *Id*. In both cases, the male student was not informed of the details of the allegations by the Title IX Coordinator. *Id*. In both cases, the Title IX reports "excluded some relevant and exculpatory evidence." *Id*.

Under the facts in *University of Mississippi*, the court found, "[t]aken as a whole,…Doe has stated a plausible claim." *Id*. at 610. The case at hand is analogous. This case is a consent-based case wherein Ms. Roe and Doe are the only witnesses with first-hand knowledge and their testimony on the critical element of consent are in exact opposition to one another. "Coupled with the alleged deficiencies in the investigation, it is plausible that the scales were tipped against Doe to such a degree that further procedural safeguards may have lessened the risk of an erroneous deprivation." 361 F. Supp. 3d at 610 (citing *Mathews*, 424 U.S. at 335).

### b.    *Denial of a Hearing.*

Doe's due process challenges numbers 2, 3, 9 and 12 allege that Doe was not given a hearing at any stage of his Title IX proceeding.   SFA  and Dr. Westbrook contend Doe received more process than he was due.[60]   In support of their contention, SFA and Westbrook attempt  to

---

[60] Motion to Dismiss at page 41.

poke holes in Doe's Complaint, which they contend is "*devoid – remarkably so – of any affirmative statements describing what occurred in the disciplinary hearing the University provided him.*" [p. 43].  SFA and Dr. Westbrook then go on to recite various allegations from Doe's complaint and criticize Doe for "merely describ[ing] what allegedly did not occur [at the hearing]." [p. 43]

The viability of SFA and Dr. Westbrook's argument that Doe received more process than Doe was due hinges on the (alleged) fact that there was a hearing.  However, there was *not* a hearing, and thus it is not remarkable at all that Doe does not allege what occurred in the hearing.  In fact, Doe unequivocally pled he was not given a hearing during the investigation stage,[61] that he was not given a hearing before the panel that considered his appeal of Dr. Scott's finding of responsibility,[62] and that  he was denied the opportunity to attend the deliberations or address the panel that was considering the appeal.[63]

Doe believes SFA takes the position that Doe's initial interview with Dr. Scott on December 14, 2016 (two days after the complaint was filed) that was attended by Doe's attorney, was the "hearing" to which SFA and Dr. Westbrook are referring in their motion.  Without debating the merits of whether an initial witness interview could, under any circumstances, be considered a hearing for the purposes of due process, at this Rule 12 stage the Court must accept as true Doe's allegations that there was no hearing and view Doe's allegations in the light most favorable to Doe.  *In re Katrina Canal Breeches Litig.,* 495 F.3d at 205.

It is noteworthy that, even in the presence of compelling video evidence and Internet postings available in *Plummer,* the accused students were given a hearing and the  opportunity to cross-examine witnesses.  As aptly observed by Justice Edith Jones in her dissent in *Plummer,*

---

[61] SAC at  ¶15.
[62] *Id.*
[63] SAC at  ¶ 54(f).

under Title IX, universities have stepped beyond their educational function into the criminal prosecution arena and should provide the requisite due process in balance:

> "In sum, I do not take the position that the students must be afforded the same procedural protection as criminal defendants. What drives my concern it the close association between the charges levelled against them and actual criminal charges. Sexual assault is not plagiarism, cheating, or vandalism of university property. Its ramifications are more long-lasting and stigmatizing in today's society. The University wants to have it both ways, degrading the integrity of its factfinding procedures, while congratulating itself for vigorously attacking campus sexual misconduct. Over prosecution is nothing to boast about.
>
> Even though these students deserve punishment, they also deserved more protective procedures given the seriousness of the charges. Accordingly, I would reverse and remand for further proceedings."

860 F.3d at 784. To the extent SFA and Dr. Westbrook contend the initial interview as an occasion adequately characterized as a hearing for the purpose of giving a student the process that is due him before rendering a decision on whether he committed sexual assault and should be expelled/suspended, the initial interview "hearing" was devoid of due process. In truth, there was no such hearing, and thus SFA and Dr. Westbrook's contention that Doe received adequate process failed at its outset.

### c.    *The Appeal.*

As to Doe's due process challenges numbers 9 through 13, taken as true as is required at this stage, these facts establish, at a minimum, that Defendants: (1) denied Doe the right to challenge the members of the panel; (2) denied Doe the right to review the evidence and other materials that were to be submitted to the panel; (3) denied Doe the right to appear before any panel; (4) denied Doe the right to cross-examine the Complainant; (5) denied Doe the right to cross-examine the witnesses against him; (6) denied Doe the right to cross-examine the investigator - Defendant Scott; and (7) denied Doe the opportunity to present evidence of bias,

incompetent investigation techniques, violation of Defendant SFA policy and violation of U.S. Department of Education Office of Civil Rights guidance on the resolution of Title IX complaints. In a proceeding where Plaintiff could be found responsible for heinous conduct that could materially alter his education, his personal reputation and his professional future, these procedural deprivations, which have been sufficiently pled, state more than a plausible claim for denial of due process.  They establish Defendants SFA, Scott, Walker and Peck, the officials in their individual capacities, knowingly and intentionally deprived Doe of his clearly established fundamental right.

### d.    Cross Examination

Doe's procedural complaints numbers 4, 5, 6 and 10 point to the absence of any opportunity to cross-examine his accuser, any of the witnesses against him or the investigator Defendant Scott. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *University of Mississippi*, 361 F. Supp. 3d at 611 (citing *Goldberg v. Kelly*, 397 U.S. 254, 269). However, as explained by the *University of Mississippi* court, "the Fifth Circuit has not 'determine[d] whether confrontation and cross-examination would ever be constitutionally required in student disciplinary proceedings.'" 361 F. Supp. 3d at 612 (citing *Plummer*, 860 F.3d at 775).

Turning to the Sixth Circuit, the *University of Mississippi* court explained that "'[t]he right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings,'" but the Sixth Circuit in 2017 decided students "'must have the right to cross-examine adverse witnesses 'in the most serious of cases.'" *University of Mississippi*, 361 F. Supp. 3d at 612 (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400–01 (6th Cir. 2017) (quoting *Flaim v. Med. College of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005)). The Sixth Circuit held, "If a case 'resolves into a problem of credibility, cross-examination of witnesses

might . . . be[ ] essential to a fair hearing.'" *Doe v. Univ. of Cincinnati, 872 F.3d at 401* (quoting

*Flaim*, 418 F.3d at 641). *University of Mississippi* further cited to *Doe v. Baum*, 903 F.3d 575, 578

(6th Cir. 2018) ("[I]f a public university has to choose between competing narratives to resolve a

case, the university must give the accused student or his agent an opportunity to cross-examine the

accuser and adverse witnesses in the presence of a neutral fact-finder."). 361 F. Supp. 3d at 612.[64]

### e.    Failure to Apply the Preponderance of the Evidence Standard.

Doe's due process challenges numbers 14 and 15 allege the failure by Defendants SFA,

Scott and Walker to properly apply the preponderance of the evidence standard to Defendant

Scott's factual findings and Defendant Walker's affirmance of those findings. Defendant Walker,

upon receiving Defendant Scott's report and prior to affirming her findings was made aware of the

fundamental flaws in her investigative techniques and her disregard of exculpatory evidence. Upon

---

[64] **Proposed Section 34 CFR 106.45(b)(2)-(b)(3),  New OCR Title IX Guidance:**
Upon the filing of a formal complaint the school must give written notice to the parties
containing sufficient details to permit a party to prepare for any initial interview and proceed
with a factual investigation. When investigating, the school must:
- Ensure the burden of proof and burden of gathering evidence rest on the school, not on the
  parties;
- Provide equal opportunity for both parties to present witnesses and evidence;
- Not restrict the ability of either party to discuss the allegations or gather relevant evidence (e.g.,
  no "gag orders");
- Provide the parties with the same opportunity to be accompanied at all phases of the grievance
  process by an advisor of the party's choice (who may be an attorney);
- Give written notice of any interview, meeting, or hearing at which a party is invited or expected
  to participate;
- Provide equal access to review all the evidence that the school investigator has collected,
  including the investigative report, giving each party equal opportunity to respond to that
  evidence before a determination is made;
- For K-12 schools, a hearing is optional but the parties must be allowed to submit written
  questions to challenge each other's credibility before the decision-maker makes a
  determination.
- For colleges and universities, a final determination must be made at a live hearing, and cross-
  examination must be allowed (with rape shield protections against asking about a
  complainant's sexual history) an must be conducted by each party's advisor (i.e., no personal
  confrontation allowed).

information and belief Defendant Scott admitted that the evidence in the case was no more than 50-50 yet Defendant Scott erroneously concluded that a preponderance of the evidence supported a finding of responsibility. Defendant Walker knew of Defendant Scott's belief that the evidence was only 50-50 and yet affirmed her finding. These allegations provide further support to a plausible claim of denial of due process.

> ### f.    Retaliation.

Doe's due process challenges numbers 16 through 19 allege retaliation by SFA for Doe's vigorous attempts to defend himself in the Title IX proceeding. It is elementary and fundamentally fair that a respondent charged with sexual assault in a Title IX proceeding should be provided evidence of the charges against him and given the opportunity to defend himself. Doe alleges this was not the case here and that Defendant SFA stonewalled his obtaining necessary records by forcing him to request those records under FERPA and the Texas Open Records Act rather than expeditiously providing the records under Defendant SFA's sexual assault procedures; intentionally delayed his ability to obtain records under the Open Records Act by misrepresenting to the Texas Attorney General that Doe was the subject of a criminal prosecution when Defendant SFA knew or through reasonable due diligence from its police department (which referred the case to the District Attorney) would have learned that, the District Attorney had determined not to pursue charges at the time Doe requested information under the Texas Open Records Act; attempted to overcharge him for copies of records and, most incredibly, stated to the Attorney General that the records should be denied because Doe's request appeared to be written by a lawyer. Though not pled as a separate claim for retaliation under Title IX, these retaliatory actions do plausibly evidence a denial of procedural due process.

4.    Doe has Plausibly Pled a Claim for Denial of Substantive Due Process

"To state a substantive due process claim a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest." *University of Mississippi*, 361 F. Supp. 3d at 614 (quoting *Williams v. Tex. Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)). As explained by the *University of Mississippi* court, "[a] dismissed student can succeed on a substantive-due-process claim if he shows 'that the university's decision was not careful and deliberate.'" 361 F. Supp. 3d at 614 (quoting *Guse v. Univ. of S.D.*, No. 08-4119, 2011 WL 1256727, at *13 (D.S.D. Mar. 30, 2011)). It is beyond question that Doe has pled facts plausibly establishing that the Defendants' decisions were not careful and deliberate.

### F.  Doe has sufficiently pled a right to injunctive relief under *Ex parte Young.*

Defendants SFA and Westbrook argued that Doe has not sufficiently pled a right to injunctive relief under *Ex parte Young*. Doe respectfully refers the court to the discussion in Section E (1) above establishing that Doe has clearly met his burden in pleading a right to relief under *Ex parte Young.*

### G.  Doe has not pled failure to comply with former and current OCR Title IX Guidance as a separate claim for relief but rather pleads that failure in support of the gender bias element of his Title IX claim and his denial of due process claims.

In their motion to dismiss, SFA and Westbrook's seventh point for dismissal is the contention that SFA's failure to comply with former and current guidance issued by the Department of Education's office of Civil Rights is not an actionable claim under Title IX. Without conceding the correctness of the argument, Doe responds that he has not pled such a failure as a ground for recovery in his Second Amended Complaint and therefore the issue is not before the court and the argument should be denied as moot.  However, Doe has sufficiently pled facts that show SFA failed to comply with former and current Department of Education OCR Title

IX Guidance demonstrating that the Defendants' were deliberately indifferent to Doe's rights

under Title IX and that the amount of process Defendants provided to Doe was inadequate and not

commensurate with his constitutional rights.

### H. Doe has not pled failure to follow SFA policies as a separate claim for relief but rather pleads that failure in support of the gender bias element of his Title IX claim and his denial of due process claims.

In their motion to dismiss, SFA and Westbrook's eighth point for dismissal is their

contention that Doe's claim that SFA failed to follow its own policies for resolving sexual assault

complaints is not an actionable Title IX claim. Without conceding the correctness of the argument,

Doe responds that he has not pled such a failure as a separate ground for recovery in his Second

Amended Complaint and therefore the issue is not before the court.  What Doe has pled is that (i)

SFA and its officials deprived Doe of his clearly established rights to even the minimal degree of

due process; (ii) that SFA's policies either did not allow Doe (and other male students) basic rights

such as the right to confront his accuser (the investigator and alleged victim), the opportunity to

see all the evidence SFA considered, the right to an impartial finder of fact and decision maker;

and (iii) that its officials were deliberately indifferent to these rights are sufficient facts to support

the gender bias element of his Title IX claim and his denial of due process claims.

### I. Doe withdraws his claim for punitive damages.

In their motion to dismiss, SFA and Westbrook's ninth point for dismissal is that Doe

fails to state a claim for punitive damages. Doe withdraws his claim for punitive damages.

### V.    CONCLUSION

Plaintiff's Second Amended Complaint and this Response have demonstrated that with

the exception of his permanent damages that has been withdrawn, Plaintiff would be entitled to

relief on all of his claims if he proves the facts set forth in his pleading. *Johnson v. Johnson,*

385 F.3d 503, 529 (5th Cir. 2004).  While Defendants' Motion goes to great lengths to point out

Plaintiff's purported evidentiary shortcomings, Plaintiff does not have to make any evidentiary

showings at this stage.  Plaintiff has aptly and plausibly pleaded all elements of his Title IX and

Section 1983 claims against Defendants Stephen F. Austin State University and Steve

Westbrook, Ed.D., as well as demonstrated that disputed facts remain in this case.  For these

reasons, Plaintiff has met his pleading burden and Defendants' Motion to Dismiss should be

denied in its entirety.

Respectfully submitted,

TATE MOERER & KING, LLP

*/s/ Richard L. Tate*

**Richard L. Tate**
State Bar No. 19664460
206 South 2nd Street
Richmond, Texas 77469
E-mail rltate@tate-law.com
Tel. (713) 341-0077
Fax (713) 341-1003

ATTORNEY FOR PLAINTIFF
JOHN DOE

## <u>CERTIFICATE OF SERVICE</u>

        I certify that on April 29, 2019, a true and correct copy of the foregoing document has been forwarded to all counsel of record herein via the ECF system which will automatically serve same as identified on the Notice of Electronic Filing (NEF), to wit:

Ken Paxton
Attorney General of Texas
Benjamin S. Lyles
Assistant Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, TX  78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
ATTORNEYS FOR DEFENDANTS

                                        */s/ Richard L. Tate*
                                        Richard L. Tate